IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOUT SAECHAO,

    Petitioner,                    Case No.2:03-cv-01433 ALA (HC)

  vs.

D.L. RUNNELS, Warden,          ORDER

    Respondent.

_____/

    Petitioner, a state prisoner proceeding *pro se*, timely filed a Notice of Appeal of this Court's dismissal of his application for a writ of habeas corpus. (Doc. 28). Before Petitioner can appeal this decision, a Certificate of Appealability must issue. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

    A Certificate of Appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court must either issue a Certificate of Appealability indicating which issues satisfy the required showing or must state the reasons why a certificate should not issue. Fed. R. App. P. 22(b)(1).

/////

/////

1

For the reasons set forth in this Court's Order, dated March 21, 2008, (Doc. 26), and reiterated in part below, Petitioner failed to make a substantial showing that his constitutional rights were infringed upon, and therefore a Certificate of Appealability shall not issue.

**I**

Petitioner contended that his application for writ of habeas corpus must be granted based on federal constitutional errors that compel the setting aside of his conviction. In analyzing these contentions, this Court complied with the restrictions Congress placed on the authority of federal courts in reviewing applications for habeas corpus relief filed pursuant to § 2254(a).

Federal habeas corpus relief is not available to state prisoners for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court in the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The California courts rejected the federal constitutional claims alleged by Petitioner in his state habeas corpus petitions without comment. Accordingly, this Court independently reviewed the record and relevant federal law to determine whether the trial court's judgment was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

/////

/////

/////

**A**

The gravamen of Petitioner's *first* and *second* claims are that the trial court violated his Fifth and Fourteenth Amendment rights to due process by instructing the jury, and permitting the prosecutor to argue, that a person can be found guilty of murder and kidnapping, as alleged in the accusatory pleading, if the evidence shows that he or she conspired with others to commit those offenses, even though the defendant was not also charged with the crime of conspiring to murder and kidnap another person.

Petitioner contended that, by instructing the jury regarding the liability of co-conspirator, the state trial court constructively amended the information by permitting the jury to convict him of a crime not charged in the accusatory pleading, i.e., conspiracy to commit first degree murder and kidnapping. Petitioner argued that "[t]he court's instructions directed the jury to find Petitioner guilty of murder and kidnapping as a principal if it found Petitioner guilty of being a member of a conspiracy to commit these crimes." Petitioner's traverse at page 5.

In *Stirone v. United States*, 361 U.S. 212, 217 (1960), the Supreme Court instructed that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Id*. at 217. The *Stirone* Court held that "[t]he very purpose of the requirement that a man be indicted by the grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens independently of either prosecuting attorney or judge." *Id.* at 218. Thus, in *Stirone*, the jury was instructed that it could convict the accused of a discrete crime not charged in the accusatory pleading.

In this matter, the trial court instructed the jury regarding the elements of the uncharged offense of conspiracy so that it could determine if he was guilty of murder and kidnapping as a co-conspirator. However, the verdict form submitted to the jury *did not* instruct the jury that it could find Petitioner guilty of the crime of conspiracy to commit the crime of murder in the first degree and kidnapping.

Petitioner failed to demonstrate that the trial court's instruction on liability of a co-

3

1  conspirator was contrary to any decision of the United States Supreme Court.

**B**

Petitioner's *third* claim for habeas corpus relief contended that the state trial court's instruction regarding uncharged offenses, based on CALJIC 2.50.1, permitted the jury to find him guilty of the charges in the accusatory pleading by a preponderance of the evidence. The trial court instructed the jury regarding the prosecution's burden of proof as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt."

The trial court also instructed the jury that evidence had been presented that "the defendant committed crimes other than that for which he is on trial." The jury read CALJIC 2.50 to the jury. It reads as follows:

> Evidence has been introduced for the purpose of showing that the
> defendant committed crimes other than that for which he is on
> trial.
>
> Except as you will be otherwise instructed, this evidence, if
> believed, may not be considered by you to prove that defendant is
> a person of bad character or that he has a disposition to commit
> crimes. It may be considered by you only for the limited purpose
> of determining if it tends to show: A motive for the commission of
> the crime charged; or the existence of a conspiracy. For the
> limited purpose for which you may consider such evidence you
> must weigh it in the same manner as you do all other evidence in
> the case. You are not permitted to consider such evidence for any
> other purpose.

4

CALJIC 2.50.

Unfortunately, the trial court also read CALJIC 2.50.1 to the jury. It reads as follows:

> Within the meaning of the preceding instruction, the prosecution has the burden of providing by a preponderance of the evidence that a defendant committed crimes other than those for which he is on trial.
>
> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other crimes.

The trial court erred in failing to limit CALJIC 2.50.1 to the evidence of uncharged crimes that was admitted to show that the defendant had a *motive* for the commission of the crime charged in the information. Evidence was presented by the prosecutor that Petitioner's motive to kill the victim was based on her threat to inform the police that he was a drug dealer. The trial court's instruction based on CALJIC 2.50.1 was inconsistent with the trial court's correct instruction based on CALJIC 4.51, that the prosecution must prove a co-conspirator's connection to the substantive crimes charged in an accusatory pleading beyond a reasonable doubt.

Pursuant to § 2254(d), this Court had to determine whether the state trial court's ambiguous and inconsistent instructions were contrary to clearly established federal law, as determined by the United States Supreme Court. In *Estelle v. McGuire*, 502 U.S. 62 (1991), the Supreme Court held that the test to be applied in determining whether an erroneous instruction violates the Due Process Clause depends upon whether the instruction by itself infected the entire trial and Petitioner's right to a fair trial. *Id.* at 72.

In determining whether a single misleading instruction violates due process, the proper inquiry is "not whether the instruction 'could have' been applied unconstitutionally, but whether there is a reasonable likelihood that the jury *did* so apply it." *Tyler v. Cain*, 533 U.S. 656, 659

n.1 (2001).  In making this determination, a federal court must view the questionable instruction in the context of the instructions as a whole.[1]  This court is persuaded, that when viewed as a whole, there is no reasonable likelihood that the jury failed to apply the trial court's instructions that Petitioner could not be found guilty unless it was persuaded beyond a reasonable doubt that he was a co-conspirator.

## C

Petitioner's *fourth* claim is that the admission of Robert Joseph Scott's hearsay testimony violated the Confrontation Clause of the Sixth Amendment.  This argument is premised on Petitioner's claim that the evidence was insufficient to demonstrate beyond a reasonable doubt that he was a co-conspirator in the kidnapping and murder of Meury Salee.  This contention was raised for the first time in Petitioner's state petition for a writ of habeas corpus.  The California Supreme Court denied habeas corpus relief without comment.  Because there is no underlying reasoned state court decision, this Court independently reviewed whether the state court's resolution of Petitioner's Confrontational Clause claim was "contrary to, or invoked an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States."  *Delgado*, 181 F. 3d at 1091.

---

[1] The prosecutor did not exploit the fact that the Court gave inconsistent instructions relating to the standard of proof required where evidence is presented of an uncharged conspiracy to connect a defendant to the substantive offenses charged in the accusatory pleading. In her final summation of the evidence that corroborated the testimony of Petitioner's accomplice, the prosecutor stated to the jury:

> All of that ladies and gentlemen, all of that in and of itself is proof beyond a reasonable doubt that the defendant was responsible for the homicide of Meury Saelee.  And we know it from the statement in Joe's room, specifically, and we know it from all the other surrounding evidence.

Reporter's Transcript at page 1748.

At no time in her closing arguments to the jury did the prosecutor argue that the jury could find Petitioner guilty if it was persuaded by a preponderance of the evidence that he was a co-conspirator in causing the kidnapping and death of the victim.

6

Scott's testimony related statements made by his co-conspirators. In one statement, Pao Thao repeated a statement made by Meuy Saelee. Respondent contended that Saelee's statement to Pao Thao was not hearsay because it was introduced for purposes of showing the effect the statements had, and not that the statements were actually true. Nonhearsay does not raise Confrontation Clause concerns. *Tennessee v. Street*, 471 U.S. 409, 414 (1985). The fundamental role of the Clause is "protecting the right of cross-examination." *Id.*. That right is protected when the declarant who repeats an out-of-court statement is cross-examined. *Id.* Here, the declarant was available for cross-examination.

As to the remaining co-conspirator statements, Respondent argued that they were made in furtherance of a conspiracy because they were "aimed at coercing Scott to keep quite [sic] and uninvolved while Thao, Petitioner, and their minions were still in the process of carrying out their sadistic endeavors." *Answer* at 22. Respondent explained that these statements were admitted pursuant to California Evidence Code Section 1223. Such statements do not raise Confrontation Clause concerns because "they are made while the conspiracy is in progress," and therefore "provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." *United States v. Inadi*, 475 U.S. 387, 395 (1986).

**D**

In his *fifth* claim, Petitioner maintained that his conviction was not supported by sufficient evidence, and therefore, also violated the Due Process Clause. Petr.'s Mem P. & A at 9. Petitioner presented this Court with a hybrid argument that there is no evidence that Saelle was ever moved without her consent, or that he was involved in the kidnapping. Petr.'s Mem. P & A. at 9.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient

1  evidence to support a conviction if, "after viewing the evidence in the light most favorable to the
2  prosecution, any rational trier of fact could have found the essential elements of the crime
3  beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive
4  question under *Jackson* is 'whether the record evidence could reasonably support a finding of
5  guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting
6  Jackson, 443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy
7  burden when challenging the sufficiency of the evidence used to obtain a state conviction on
8  federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  In a state
9  prisoner's application for a writ of habeas corpus, a federal court must find that the decision of
10 the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the
11 fact of the case.  *Id.* at 1275.

12 When the sufficiency of the evidence is challenged by a state prisoner in federal habeas
13 corpus proceedings, a federal court must review the entire record.  *Adamson v. Ricketts*, 758 F.2d
14 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc),
15 rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to
16 weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."
17 *Jackson*, 443 U.S. at 319.  If the trier of fact could draw conflicting inferences from the
18 evidence, a reviewing court will assign the inference that favors conviction.  *McMillan v. Gomez*,
19 19 F.3d 465, 469 (9th Cir. 1994).  "The relevant inquiry is not whether the evidence excludes
20 every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict."
21 *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting *United States v. Mares*,
22 940 F.2d 455, 458 (9th Cir. 1991)).  A federal court must determine the sufficiency of the
23 evidence in reference to the substantive elements of the criminal offense as defined by state law.
24 Jackson, 443 U.S. at 234 n.16.

25 Under California law, a simple kidnapping occurs when a person: (1) forcibly, or by any
26 other means of instilling fear; (2) steals or takes, or holds, detains, or arrests any person; and (3)

1  and carries the person into another country, state, or county, or into another part of the same
2  county.  Cal. Penal Code § 207(a).  Kidnapping can only be accomplished by the use or threat of
3  force; fraud is not enough.  *People v. Davis*, 896 P.2d 119, 148 n.13 (Cal. 1995) (quoting *People*
4  *v. Green*, 609 P.2d 468, 507 (Cal. 1980)).  There is no dispute that Saelee was moved from the
5  duplex to Jones' house and back.  RT at 723, 745.  This leaves the question of whether Saelee
6  was forced to move against her will.

7  The element of forcible asportation required for a kidnapping conviction is not met where
8  the person in question consents to go with the defendant, even if consent is obtained by fraud.
9  *Davis*, 896 P.2d at 147.  However, kidnapping may still occur if a victim initially voluntarily
10 goes somewhere with a defendant, or voluntarily permitted the defendant to go somewhere with
11 her, but thereafter the victim is transported after being forcibly restrained from leaving.  *Id.* at
12 147-48 (holding that there was sufficient evidence to support the prosecution's theory that a
13 consensual asportation became a kidnapping when the defendant applied force to the victim and
14 thereby transformed the event into a kidnapping from that point on).

15 The testimony at trial was sufficient to support an inference that Saelee agreed to go to
16 Henry Jones's house with Petitioner and his friends.  The prosecutor presented testimony that
17 Saelee may have consented to going back to the duplex with Petitioner and his friends.  Answer,
18 Appendix F at 10.  Although Saelee may have at some point consented to accompanying
19 Petitioner, her consensual movement was later transformed into a kidnapping by force.  The
20 record shows that Saelee tried to leave the group or "escape" on numerous occasions.  However,
21 on each occasion, Saelee was prevented from doing so by physical force and violence.

22 In addition to the physical force that transformed Saelee's movements into a kidnapping,
23 there was evidence that implicated Petitioner in Saelee's kidnapping as a co-conspirator.  This
24 evidence is sufficient for a reasonably jury to find beyond a reasonable doubt that Saelee was
25 forcibly moved and that Petitioner was involved.  This conclusion is supported by Saelee's
26 demeanor during the events on the day of her death.  Saelee was repeatedly crying and upset that

she was not being allowed to leave. *Id.* at 731, 1155.  This evidence provides a sufficient basis for a reasonable jury to find that Saelee was forcibly moved against her will and, therefore, kidnapped.  Petitioner's conviction for kidnapping and first degree murder was supported by the evidence.

**E**

In his *sixth* claim, Petitioner asserted that his trial counsel's representation was ineffective in violation of the Sixth Amendment because he failed to object during trial to the constructive amendment of the accusatory pleading, the improper application of the preponderance of the evidence standard of proof in a criminal proceeding, and the failure to object to the admission of hearsay evidence in violation of the Confrontation Clause.  As discussed above, this Court determined that reversible error did not occur regarding each of these contentions.  Therefore, Petitioner failed to demonstrate that his trial counsel's performance was prejudicial.

**F**

Petitioner's *seventh* claim also maintained that his counsel was ineffective for failure to present his claim that his trial counsel was ineffective.  This Court determined that Petitioner failed to demonstrate that his trial counsel's representative was ineffective.  Accordingly, Petitioner's contention that his appellate counsel was ineffective also must be rejected.

**G**

Finally, Petitioner argued that his trial counsel was ineffective for failing to conduct a reasonable investigation to determine whether Jones would have contradicted Tonette McBride's testimony at trial.

When evaluating an ineffective assistance of counsel argument concerning failure to investigate, locate, and produce additional witnesses at trial, a thorough understanding of the case as presented to the jury is necessary to determine whether the additional evidence would undermine confidence in the outcome.  *Lord v. Wood*, 184 F.3d 1083, 1085 (9th Cir. 1999).

1      In an evidentiary hearing conducted during Petitioner's habeas proceedings before the
2 California Superior Court, Jones was called as a witness by Petitioner's trial counsel.  He
3 testified as follows:

4> I was sitting in my front room, which is a big picture window, and
5> I was watching television when I seen them pull in the driveway,
6> because it's right in the front.  And the doors open and Saelee got
7> out and run out across the lawn.  Lo Choi Saechao got out of the
8> front, on the passenger side and caught up with her and he was
9> kind of slapping her around and slapping her up in the head.  So I
10> got up in between them, telling him he can't do that because I got
11> neighbors that – you know, create a disturbance like that at my
12> house.

13 The record also reflects the following colloquy:

14> Q.  After you stopped Lo Choi Saechao from hitting on Saelee,
15> how was Saelee acting?
16> A.  She was crying.  She told me she didn't want to be there.
17> Q.  During the time that you stayed with Saelee did her demeanor
18> change in any way?  Did she stay upset and crying or did that
19> change?
20> A.  No.  She calmed down and we talked...She really calmed down.
21> I couldn't hardly understand her in the beginning, you know,
22> because she was pretty upset and crying.
23> Q.  When – did you see Saelee ever get in the car ready to leave?
24> A.  Yes.
25> Q.  Did anybody force her to get in the car to leave as it appeared
26> to you?

1  A. No.

2  Q. Did Saelee – by the time she got in the car to leave, you said

3  she was calmed down?

4  A. Yeah, she calmed down and no crying....

5  Q. Did you see anything that would suggest to you that Saelee was

6  leaving in that car against her will?

7  A. No.

8  Q. When you were talking to Saelee, did she express to you–

9  make any statements to you of fear or concerns for her own safety?

10  A. No.

This testimony does not undermine Petitioner's conviction. Jones's testimony showed that Saelee tried to escape, and was physically prevented from doing so by Lo Choi Saechao. This testimony also supported the testimony of Barbara Chang, Lo Choi Saechao, and McBride that Saelee tried to leave, but was physically prevented from doing so. Accordingly, Petitioner was not prejudiced by counsel's failure to investigate, locate, and produce Jones for trial.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that a Certificate of Appealability shall not issue.

/////

DATED: May 23, 2008

                                          /s/ Arthur L. Alarcón
                                          UNITED STATES CIRCUIT JUDGE
                                          Sitting by Designation